A04A2385. STEVENSON v. THE STATE.
(612 SE2d 521)

ADAMS, Judge.

A Meriwether County jury convicted Kelevin J. Stevenson of one count of rape, but acquitted him on additional counts of kidnapping

with bodily injury, false imprisonment and aggravated assault. In this appeal, Stevenson asserts error in the trial court's denial of his out-of-time motion for new trial. We affirm.

1. Stevenson first argues that the evidence was insufficient to support his conviction, noting that the rape conviction is inconsistent with his acquittal on the counts of kidnapping with bodily injury, aggravated assault and false imprisonment. He also asserts that the rape charge should have merged with other charges.

Stevenson's argument that the verdict is inconsistent has no merit under Georgia law:

> Georgia does not recognize an inconsistent verdict rule, which would permit a defendant to challenge the factual findings underlying a guilty verdict on one count as inconsistent with the findings underlying a not guilty verdict on a different count. A conviction on one count and acquittal on another related count may reflect a compromise or lenity by the jury rather than inconsistent factual conclusions, and Georgia courts generally will not look behind the jury's decision to convict on certain counts and acquit on other counts.

(Citation and footnote omitted.) *Mullady v. State*, 270 Ga. App. 444, 447 (2) (606 SE2d 645) (2004). See also *Wyley v. State*, 259 Ga. App. 348 (1) (577 SE2d 32) (2003) ("the jury's not guilty verdicts on some offenses have no bearing whatsoever on the sufficiency of the evidence supporting the guilty verdicts on other offenses").[1]

Similarly, there is no merit to Stevenson's argument that he is entitled to a reversal on the ground of merger. If a defendant's conduct establishes more than one crime, he may be prosecuted for each crime. OCGA § 16-1-7 (a). But under the merger doctrine, "one may not be convicted legally of a crime that is included as a matter of law or fact in another crime for which that person stands convicted. . . ." (Footnote omitted.) *Brewster v. State*, 261 Ga. App. 795, 798 (2) (584 SE2d 66) (2003). See also OCGA § 16-1-7 (a) (1), (2). Thus, although a defendant may be tried on multiple counts arising out of the same conduct, the rules of merger permit only one conviction and sentence for a single crime and all included offenses. Because Stevenson was convicted under only one count, the issue of merger does not arise in

---

[1] Moreover, the verdict was not necessarily inconsistent. Even though the indictment charged Stevenson with kidnapping with bodily injury, and alleged rape to be the bodily injury, the jury could have found, based upon the evidence, that Stevenson raped Walker but did not kidnap her. Nor was the rape conviction inconsistent with the decision to acquit on the charges of aggravated assault and false imprisonment.

this case. *Hill v. State*, 207 Ga. App. 65, 68 (5) (426 SE2d 915) (1993).[2]

And it is apparent from a review of the testimony at trial that there was sufficient evidence to support Stevenson's rape conviction. In considering this appeal, we view the evidence in the light most favorable to the verdict, and Stevenson no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only look to see if there is any evidence to support the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Kelly v. State*, 255 Ga. App. 813 (1) (567 SE2d 36) (2002). "Conflicts in the testimony of the witnesses . . . are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Kelly v. State*, 255 Ga. App. at 813 (1).

Viewed in the light most favorable to support the jury's verdict, the evidence shows that Stevenson worked at Cagle's Incorporated in Harris County, along with Latysha Walker and Mandrell Parham. On October 9, 2001, Walker, Stevenson and Parham got off work at 1:45 p.m. and drove to the home of Demetria Lowe in Manchester, after first making several stops to purchase alcohol, marijuana and cocaine. The three arrived at Lowe's house at about 5:00 p.m. and sat talking to each other in the living room.

At some point, Walker left the living room to use the bathroom and Stevenson followed her and tried to enter the bathroom behind her. Walker told Stevenson that he could use the bathroom when she was finished. She told Stevenson to step out of the bathroom, and she managed to close and lock the door when he left. As Walker was still in the bathroom, Stevenson suddenly came in and grabbed her by the pants, tearing them in the process, and pulled her into a nearby bedroom. Walker testified that Stevenson then held her down on the bed with his elbow across her throat, as he forced her to have intercourse with him and she pleaded for him to stop.

During this time, Parham asked Lowe if he could use her bathroom. When he opened the bathroom door, he could see Stevenson on top of Walker, with his forearm around her neck. Walker was partially naked and was saying, "No, K. J.; stop K. J.; I can't breathe." Parham said that he panicked and left because he did not want to have anything to do with what was happening.

---

[2] Accordingly, we find no merit to Stevenson's argument that his trial counsel was ineffective in failing to raise either the issue of an inconsistent verdict or the issue of merger before the trial court. A trial attorney is not ineffective in failing to pursue a futile or meritless argument in the accused's defense. See *Davis v. State*, 267 Ga. App. 245, 246 (2) (599 SE2d 237) (2004); *Massingill v. State*, 240 Ga. App. 690, 691 (2) (b) (524 SE2d 746) (1999).

Stevenson admitted at trial that he had sex with Walker at Lowe's house, but he testified that Walker and Parham were doing cocaine in the bathroom at Lowe's house, when they called for him. Walker indicated at that point that she wanted to have sex with him. He said that Walker never screamed, cried or asked him to stop.

"A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will. . . . Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1 (a) (1). We conclude that there is sufficient evidence from which the jury could have found beyond a reasonable doubt that Stevenson was guilty of the offense of rape. *Munn v. State*, 263 Ga. App. 821, 823 (1) (589 SE2d 596) (2003); *Williams v. State*, 218 Ga. App. 785, 789 (4) (463 SE2d 372) (1995).

2. Stevenson next asserts that the trial court erred in allowing the state to present expert testimony on rape trauma syndrome because Georgia has not yet recognized the existence of this syndrome as an accepted scientific principle, and the trial court below did not make such a finding.

The prosecutor in this case presented the testimony of Elizabeth Carnes, an advocate for victims of sexual assault at the Carroll Rape Crisis Center. Carnes testified that she has been through fifty hours of sexual assault training and had worked at the rape crisis center for over two years. During that time, she had counseled over 100 purported victims of sexual assault. In addition, Carnes had published one article that was presented at a seminar and had written several articles for the center's newsletter. Based upon this testimony, the trial judge qualified Carnes as an expert, but instructed the jury that he was allowing her to testify regarding the conduct of individuals who allege sexual assault or rape only to a very limited extent. He told the jury that Carnes could not testify as to whether anyone had been raped.

Carnes testified that there was no typical reaction to sexual assault and that alleged victims can react in many different ways. She also said that based upon national statistics and her own experience, approximately 86 percent of victims do not report their sexual assault to authorities, and of those who do report the crime, approximately 12 percent wait 24 to 72 hours to make the report, for a number of reasons. For example, they may be scared or they may be experiencing trauma.

Although Stevenson is correct that this state has not yet recognized rape trauma syndrome as an accepted principle in the scientific community,[3] we do not construe Carnes's testimony as relating to

---

[3] See *Prickett v. State*, 220 Ga. App. 244, 246-247 (3) (469 SE2d 371) (1996), overruled on

such a syndrome. Rather, she said that there was no typical or common behavior among rape victims. And although she testified that alleged victims of sexual assault may delay reporting such crimes, this Court has previously upheld the admission of similar testimony from a similar witness. *Thomas v. State*, 239 Ga. App. 460, 462-463 (3) (521 SE2d 397) (1999).

In *Thomas*, the state presented the testimony of the director of the Augusta Rape Crisis Center regarding the number of women who delay in reporting a rape or fail to report at all. The Court held that disputed testimony was "clearly related to knowledge within [the witness's] area of expertise" and found no error in its admission. Id. While the witness in *Thomas* had a master's degree in clinical counseling and more experience in counseling sexual assault victims, we cannot say that the trial court manifestly abused its discretion in qualifying Carnes as an expert in this case.

> A decision as to whether a witness possesses such learning or experience to qualify as an expert witness lies within the sound discretion of the trial court and will not be disturbed unless manifestly abused. An expert is one whose habits and profession endow that person with the particular skill needed in forming an opinion on the subject matter at inquiry.

(Citations omitted.) *Griffin v. State*, 243 Ga. App. 282, 286 (5) (531 SE2d 175) (2000). "Formal education in the particular subject is not a prerequisite for expert status." (Citation omitted.) *Smith v. State*, 210 Ga. App. 451, 452 (3) (436 SE2d 562) (1993).

3. Stevenson next contends that he was denied the effective assistance of counsel at trial. "To establish a claim of ineffectiveness, it is the defendant's burden to show that trial counsel's performance was deficient *and* that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668, 695-696 (104 SC 2052, 80 LE2d 674) (1984); [cit.]" (Emphasis in original.) *Baker v. State*, 270 Ga. App. 762, 764 (2) (608 SE2d 38) (2004). Moreover, "[t]here is a strong presumption that trial counsel performed within the wide range of

---

other grounds, *State v. Belt*, 269 Ga. 763, 764, n. 1 (505 SE2d 1) (1998); *Edmonson v. State*, 212 Ga. App. 449, 450 (1), n. 1 (442 SE2d 300) (1994), overruled on other grounds, *Curtis v. State*, 275 Ga. 576, 578 (1) (571 SE2d 376) (2002). We find these cases distinguishable from the present case. In *Prickett*, the counselor testified about his understanding of post traumatic stress disorder and rape trauma syndrome, and stated that he had diagnosed the victim with post traumatic stress disorder. 220 Ga. App. at 246 (3). Here, there was no testimony regarding such disorders and no evidence that Carnes had even met Walker. In *Edmonson*, the state presented the testimony of a nurse regarding common patterns of behavior exhibited by rape victims. 212 Ga. App. at 450 (1), n. 1. Carnes, in contrast, testified that there is no typical reaction for sexual assault victims. Moreover, in *Edmonson* the defense did not appeal this issue, so this Court did not address the admissibility of such evidence.

reasonable professional assistance, and a trial court's finding that counsel's performance was within that range will not be reversed on appeal unless it is clearly erroneous." (Footnote omitted.) *Marshall v. State*, 253 Ga. App. 645, 646 (560 SE2d 118) (2002).

(a) Stevenson first contends that his trial counsel was ineffective for failing to file a motion for new trial or a notice of appeal, even though he directed him to do so. We note at the outset that this argument goes to Stevenson's right to pursue an out-of-time appeal and does not address the propriety of his trial, as there is no evidence that the attorney's failure to file a motion for new trial or an appeal affected the outcome of the trial itself. Cf. *Black v. State*, 264 Ga. 550, 552 (1) (448 SE2d 357) (1994) (counsel's errors in sentencing phase do not justify a new guilt/innocence trial).

> Fundamental Georgia law recognizes the defendant's right to effective assistance of counsel on appeal from a criminal conviction and permits out-of-time appeals if the defendant was denied [his] right of appeal through counsel's negligence or ignorance, or if the defendant was not adequately informed of [his] appeal rights.

(Citations omitted.) *Smith v. State*, 263 Ga. App. 414, 416 (1) (587 SE2d 787) (2003). But a defendant can forfeit his right to appeal, through his own conduct, by sleeping on his rights. Id.

At the hearing on the motion for new trial, Stevenson's trial attorney testified that Stevenson never directed him to file such pleadings and stated that he was not hired to represent Stevenson in connection with either the motion or the notice of appeal. The attorney produced a copy of his retainer agreement signed by Stevenson's fiancée in connection with this case, which states in bold print that the agreement does not include appeals or motions for new trial. He said that he went over this agreement in detail with the fiancée, and it is his normal practice to review it with a defendant in such circumstances, although he could not remember specifically reviewing the agreement with Stevenson. The attorney quoted a fee of $5,000 to either Stevenson's fiancée or his mother (or both) for handling the appeal in this case. He said that no one contacted him further. In fact, he said that he was never paid in full for handling the trial. He also produced a letter in which he sent the fiancée a copy of the sentence review he had filed on Stevenson's behalf, which noted that Stevenson had 30 days from the sentence in which to file his appeal.

But Stevenson presented the testimony of his fiancée and his mother, who both stated that although they knew that the attorney wanted more money, they believed that he was filing the appeal to

preserve Stevenson's rights. And Stevenson testified that he directed his attorney to file the appeal.

Based upon this evidence, the trial court stated at the hearing that it was ruling in Stevenson's favor and finding that his trial attorney was ineffective on this ground in order to pave the way for Stevenson to file an out-of-time appeal. Thus, Stevenson has been able to pursue his rights on appeal, and no basis for reversal exists.

(b) Stevenson further asserts that his trial attorney was ineffective in failing to conduct a proper pre-trial investigation into the indictment in this case. He asserts that his attorney should have discovered that one of the members of the grand jury, Kenzy Lee Parham, should have been disqualified because he was a convicted felon and was the father of Mandrell Parham, one of the prosecution's witnesses in the case. See OCGA §§ 15-12-60; 15-12-70.

But Stevenson presented no admissible evidence or testimony at the hearing to support the contention that one of his grand jurors had been convicted of a felony. The only evidence was Stevenson's hearsay statement that Kenzy Lee Parham had a drug conviction dating from 1990. Although Stevenson said he had a certified copy of that conviction, it was not introduced into evidence. Nor was any evidence presented to show that the Kenzy Lee Parham to whom Stevenson referred was the same man who served on his grand jury. And Stevenson conceded that he did not know whether Kenzy Lee Parham had had his civil rights restored, which would remove his disqualification from serving on the grand jury. OCGA § 15-12-60 (b) (2).

Stevenson also testified that Kenzy Lee Parham was Mandrell Parham's father. Even if this evidence was sufficient to demonstrate that one of the grand jurors on Stevenson's indictment was related to a witness in his case, and assuming, without deciding, that this was enough to disqualify the juror, Stevenson has failed to show how he was prejudiced by his counsel's failure to discover this information. The disqualification of a grand juror under OCGA § 15-12-70 "is not a viable ground for quashing the indictment." *Black v. State*, 264 Ga. at 552 (2) (indictment not subject to dismissal where sheriff's sister-in-law was on grand jury in case where the sheriff was the victim of an aggravated assault by defendant), citing *Bolds v. State*, 195 Ga. App. 586 (394 SE2d 593) (1990) (indictment not quashed where grand juror was aunt of district attorney). See also *Bitting v. State*, 165 Ga. 55, 60-64 (139 SE 877) (1927) (disqualification of a grand juror on account of prejudice will not require dismissal of a charge).

Accordingly, we cannot say that it was clear error for the trial court to deny the motion on this ground.

(c) Stevenson also argues that his trial attorney was ineffective in failing to call an expert witness and other witnesses who he asserts would have been helpful to his case. But he failed to present any

admissible proffer as to what the testimony of these witnesses would have been. Thus, Stevenson failed to show that their testimony would have been favorable and that it would have created a reasonable probability of a different outcome at trial. *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995).

(d) Next, Stevenson asserts that his trial counsel failed to take action when some of the jurors saw him as he was transported to the courtroom in handcuffs and shackles. Although Stevenson said he told his attorney about the incident, the attorney testified at the new trial hearing that he was not aware of any such incident and that no one ever brought it to his attention.

Stevenson did not present any evidence from the jurors or any other witness at the motion hearing to demonstrate that any juror actually saw him in shackles or handcuffs. But even assuming that a juror did see him so restrained and assuming, without deciding, that trial counsel was deficient by not making a timely objection to Stevenson's appearance in restraints before jurors, "we cannot say that there is a reasonable chance that the outcome of the trial would have been different had counsel made a timely objection. We cannot presume the jury was unfairly tainted by [Stevenson's appearance]." (Footnote omitted.) *Walker v. State*, 268 Ga. App. 669, 674 (4) (c) (602 SE2d 351) (2004).

(e) Stevenson contends that his trial counsel failed to strike jurors during voir dire according to his directions. The decision on which jurors to accept and which jurors to strike is one of trial strategy, and "[t]rial counsel's strategic decisions made after thorough investigation are virtually unchallengeable." (Citation and footnote omitted.) *Oliver v. State*, 270 Ga. App. 429, 430 (2) (b) (606 SE2d 874) (2004).

Stevenson's trial counsel stated that Stevenson did not instruct him to strike any jurors. He said that if Stevenson had directed him to strike a particular juror, he would have done so. Although they did discuss concerns about one juror who had law enforcement experience, the trial attorney said that he did not strike that juror because there were worse jurors further down on the list, and the juror did not give "bad answers" during voir dire.

We find that the trial court did not err in denying the motion on this ground. *Oliver v. State*, 270 Ga. App. at 431 (2) (d).

(f) Stevenson further contends that his trial counsel was ineffective in failing to object when he claims the prosecution knowingly presented perjured testimony and tampered with the jury. But Stevenson presented absolutely no evidence to support these allegations of prosecutorial misconduct and his argument on this ground fails.

*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 21, 2005 —

*Joseph W. Jones, Jr.*, for appellant.

*Peter J. Skandalakis, District Attorney, Robert N. Peterkin, Assistant District Attorney*, for appellee.