In the Supreme Court of Georgia

Decided:   October 20, 2014

S14A0878. MILLER v. THE STATE.

BLACKWELL, Justice.

Eric Miller was tried by a Fulton County jury and convicted of murder and the unlawful possession of a firearm during the commission of a felony, both in connection with the fatal shooting of Luther Williams. Miller appeals, contending that the trial court erred when it admitted certain evidence, and arguing as well that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] Williams was killed on July 31, 2006. Miller was indicted on March 23, 2007 and charged with malice murder, felony murder, aggravated assault, and unlawful possession of a firearm during the commission of a felony. His trial commenced on August 21, 2007, and the jury returned its verdict two days later, finding him guilty on all counts. Miller was sentenced to a term of imprisonment for life for malice murder and a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony. The verdict as to felony murder was vacated by operation of law, Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the aggravated assault merged with the malice murder. Miller timely filed a motion for new trial on August 30, 2007, and he amended it on April 19, 2013. The trial court denied his motion on November 5, 2013. Miller timely filed a notice of appeal on November 15, 2013, and the case was docketed in this Court for the April 2014 term and submitted for decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence shows that Miller encountered Williams at an Atlanta apartment complex on the evening of July 31, 2006. The two men argued about money — Miller claimed that Williams was indebted to Miller — and in the course of that argument, Miller pulled out a handgun, fired into the ground, and began to chase Williams, firing additional shots at Williams as they ran. Eventually, Miller stopped, took aim, and shot Williams in the back of his head. Williams died as a result of his gunshot wound. Two eyewitnesses — both of whom knew Miller personally — identified Miller as the shooter, and Miller confessed to his girlfriend that he shot Williams after they argued about money. Miller does not dispute that the evidence is legally sufficient to sustain his convictions, but consistent with our usual practice in murder cases, we have independently reviewed the evidence to assess its sufficiency. We conclude that the evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Miller was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Miller contends that the trial court erred when it permitted a police officer to testify that investigators identified someone known as "Little E" as a

2

suspect in the shooting. Officer Shaun Houston, the first police officer to respond to the scene of the shooting, testified at trial, and when he started to mention what a civilian at the scene had said, Miller objected on hearsay grounds, and the trial court sustained the objection. Later, Houston testified that investigators identified a suspect in the course of their investigation. The prosecuting attorney then asked Houston whether the investigators had "[gotten] a name," and Miller again objected. At that point, the trial court cautioned the prosecuting attorney to tread carefully, and the prosecuting attorney then rephrased his question, asking Houston about the identity of the person suspected at that time by investigators. Houston responded: "The suspect [went by an] alias [of] 'Little E.' We had nothing else to go on." Miller did not object to the rephrased question, nor to the testimony that Houston gave in response to it. Miller now argues, however, that the testimony about the identification of "Little E" as a suspect implied that witnesses at the scene had identified "Little E" as the shooter, that it amounts to hearsay, and that its admission was reversible error.

Miller is wrong for several reasons. First, he did not object to the testimony about which he now complains, and he has failed to preserve the issue

3

for appeal. See Durham v. State, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012). Second, even if Miller had objected, Officer Houston did not say or necessarily imply that any witness had identified "Little E," only that investigators considered "Little E" a suspect. Cf. McKenzie v. State, 271 Ga. 47, 48 (2) (518 SE2d 404) (1999). Finally, even to the extent that Houston implied by his testimony that a witness had identified "Little E" as the shooter, any error in the admission of that testimony would have been harmless. Not only did Houston never testify that any witness had identified "Little E" as the shooter, but he also never testified that Miller was known as "Little E." Accordingly, nothing that Houston said "directly inculpated" Miller. See id. An eyewitness to the shooting testified at trial that "Little E" was the shooter, and other witnesses identified Miller as "Little E." Moreover, eyewitnesses specifically identified Miller as the shooter, and that testimony, as well as the testimony that Miller confessed to his girlfriend that he shot Williams, renders it highly probable that any erroneously admitted testimony about "Little E" having been identified as a suspect did not contribute in any meaningful way to the verdict. See id. at 49 (2). See also Weems v. State, 269 Ga. 577, 579 (2) (501 SE2d 806) (1998).

4

3. Miller also contends that the trial court erred when it admitted testimony that Williams was working two jobs to help support his family, with whom he had relocated to Atlanta in the aftermath of Hurricane Katrina. According to Miller, this testimony amounts to "victim impact" evidence that was unfairly prejudicial. But at trial, Miller did not object to the testimony on the grounds that it was impermissible "victim impact" evidence or unfairly prejudicial. Accordingly, Miller failed to preserve for appellate review the claim of error that he now urges. See Colon v. State, 275 Ga. App. 73, 75 (2) (619 SE2d 773) (2005); Holmes v. State, 271 Ga. App. 122, 124-125 (4) (608 SE2d 726) (2004); Shelton v. State, 251 Ga. App. 34, 38-39 (4) (553 SE2d 358) (2001).

4. Miller also claims that he was denied the effective assistance of counsel at trial. To prevail on a claim of ineffective assistance, Miller must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Miller must show that she performed her duties at trial in an objectively unreasonable way, considering all the circumstances, and in the

5

light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Miller must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one. See Kimmelman, 477 U. S. at 382 (II) (C). We conclude that Miller has failed to carry his burden.

(a) Miller contends that his trial lawyer was ineffective because she failed to call his mother as a witness at trial. His mother could have testified, he contends, that Miller cut off his "dreadlocks" four days before the murder, which would have contradicted eyewitness testimony that Miller had dreadlocks at the time of the shooting. But decisions about which witnesses to call at trial "are matters of trial strategy and tactics, and such strategic and tactical decisions do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances."

6

Washington v. State, 294 Ga. 560, 566 (3) (755 SE2d 160) (2014) (citations omitted). See also Gibson v. State, 290 Ga. 6, 12 (6) (b) (717 SE2d 447) (2011). At the hearing on the motion for new trial, Miller's trial lawyer explained that, although she did not recall exactly why his mother was not called as a witness, the lawyer thought that there were some issues about precisely when Miller cut off his dreadlocks. Another lawyer who represented Miller before trial (but was on medical leave during the trial) testified that there was, in fact, some discrepancy as to exactly when the dreadlocks were removed, and Miller's lawyers did not want the State to be able to argue that Miller cut off his dreadlocks right after the crime in an attempt to "change his identity." The trial court credited the testimony of the lawyers, and in light of that testimony, we cannot say that their concerns about evidence that Miller cut off his dreadlocks around the time of the shooting were unreasonable. That trial counsel did not call the mother and thereby open the door to argument about Miller having sought to change his appearance does not amount to ineffective assistance. See Carey v. State, 281 Ga. App. 816, 818-819 (2) (637 SE2d 757) (2006).

(b) Miller also argues that his trial lawyer was ineffective because she failed to object to the admission of triple hearsay or move for a mistrial when

7

Detective Danny Agan testified that Officer Houston told Agan at the scene that a local resident said he had heard that "Little E" did it. Assuming that this evidence was inadmissible under former OCGA § 24-3-2, Miller has not shown how he was prejudiced. See Whitaker v. State, 269 Ga. 462, 465 (4) (b) (499 SE2d 888) (1998). The evidence of which Miller complains was cumulative of the eyewitness testimony, including the eyewitness identification of "Little E" as the shooter, as well as Miller's confession to his girlfriend and the identification of Miller as "Little E" by other witnesses. See Division 2, supra. Accordingly, the evidence supports the trial court's conclusion that there is no reasonable probability that the failure of Miller's lawyer to object to Detective Agan's testimony affected the outcome of the trial. See Maurer v. State, 320 Ga. App. 585, 592 (6) (b) (740 SE2d 318) (2013). See also Morris v. State, 284 Ga. 1, 4 (3) (662 SE2d 110) (2008).

Judgment affirmed. All the Justices concur.