**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 18, 2015**

# In the Court of Appeals of Georgia

A14A2215. PEPE-FRAZIER v. THE STATE.

DILLARD, Judge.

Following a trial by jury, David Pepe-Frazier was convicted of trafficking of persons for sexual servitude, pimping, aggravated child molestation, enticing a child for indecent purposes, and contributing to the delinquency of a minor. On appeal from these convictions, Pepe-Frazier argues that (1) the trial court erred by admitting prior consistent statements of the victim, (2) the trial court erred by qualifying two expert witnesses, and (3) he received ineffective assistance in various regards. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the record reflects that on April 18, 2009, the then 14-year-old victim encountered Pepe-Frazier

---

[1] *See, e.g.*, *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

when he offered her a ride. The victim was initially hesitant to accept Pepe-Frazier's offer, but upon noticing that his vehicle was occupied with another male and two young females, she agreed to do so. Pepe-Frazier then drove the group to a house, where the victim spoke at length with the other male, who she came to know as "Swatt" (and who was later identified as Harvey White), before engaging in sexual intercourse with him.

During this time, Pepe-Frazier left the house with the two other females, but upon their return, the victim noticed that one of the females carried a substantial amount of cash and wore "very short shorts." Pepe-Frazier then informed the victim that he knew she had engaged in sexual intercourse with White and advised her that she "might as well get paid for it" (rather than having sex with men for free). The victim remained at the house for several days and eventually agreed to work as a prostitute for Pepe-Frazier.

Thereafter, over the course of several weeks, either Pepe-Frazier or the home's female owner would drive the victim and other females, including Pepe-Frazier's girlfriend (who assisted him in training new prostitutes), to areas where she and the other prostitutes would seek out multiple men with whom to engage in sexual intercourse in exchange for money. And while Pepe-Frazier initially allowed the

2

victim to keep half of what she earned, within days he began taking all of the money she made as a prostitute.

On one occasion, while the victim lived in the house with Pepe-Frazier and the other prostitutes, Pepe-Frazier made the victim perform oral sex on him while he was simultaneously engaged in sexual intercourse with his girlfriend. And although the victim soon decided that she no longer wished to be a prostitute, she was afraid of Pepe-Frazier after he slapped her when she tried to remove his hand from her mouth and, in another incident, choked and slapped her after a man called her cell phone. Additionally, approximately one week after the victim's arrival, she witnessed Pepe-Frazier pull a gun on another prostitute who attempted to leave the house. The victim also witnessed Pepe-Frazier punch the woman who owned the house in the stomach and saw him engage in several physical altercations with his girlfriend.

Nevertheless, despite her fear of Pepe-Frazier, the victim eventually made contact with her sister and informed her that she was scared and wished to come home. And shortly thereafter, as the victim was being driven to an area where she regularly prostituted, she text-messaged her family with various landmarks as she passed them, and she then waited in the restroom of a fast-food restaurant while her family notified law enforcement of her location. The vehicle she was driven in was

pulled over a short distance down the road based on the victim's description, and she later positively identified Pepe-Frazier in a photographic lineup.

At Pepe-Frazier's trial, in addition to the victim's testimony and that of another former prostitute who worked alongside her, the State also presented testimony from White that, *inter alia*, he was with Pepe-Frazier when the victim was picked up; Pepe-Frazier convinced the victim to work as a prostitute; Pepe-Frazier's prostitute girlfriend assisted in training new recruits; he saw the victim summoned to Pepe-Frazier's room while Pepe-Frazier was engaged in sexual intercourse with his girlfriend; and he saw Pepe-Frazier slap the victim "real hard" when she used her cell phone. Pepe-Frazier was convicted of all the offenses enumerated *supra*, and this appeal follows.

At the outset, we note that on appeal from a criminal conviction, the defendant is "no longer entitled to a presumption of innocence and we therefore construe the

evidence in the light most favorable to the jury's guilty verdict."[2] With this guiding principle in mind, we turn now to Pepe-Frazier's enumerations of error.

1. First, Pepe-Frazier contends that the trial court erred by admitting a prior consistent statement by the victim that was pure hearsay and bolstered her credibility. Specifically, Pepe-Frazier argues that the trial court erred by overruling an objection to testimony by a law-enforcement officer that the victim said Pepe-Frazier slapped

---

[2] *Id.* We note that the evidence was sufficient to sustain Pepe-Frazier's convictions, though he makes no argument as to the sufficiency of the evidence on appeal. *See id.*; *see also* OCGA § 16-5-46 (c) ("A person commits the offense of trafficking a person for sexual servitude when that person knowingly subjects another person to or maintains another person in sexual servitude or knowingly recruits, entices, harbors, transports, provides, or obtains by any means another person for the purpose of sexual servitude."); OCGA § 16-6-11 (5) ("A person commits the offense of pimping when he or she . . . [a]ids or abets, counsels, or commands another in the commission of prostitution or aids or assists in prostitution where the proceeds or profits derived therefrom are to be divided on a pro rata basis."); OCGA § 16-6-4 (c) ("A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."); OCGA § 16-6-5 (a) ("A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts."); OCGA § 16-12-1 (b) ("A person commits the offense of contributing to the delinquency or dependency of a minor or causing a child to be a child in need of services when such person . . . [k]nowingly and willfully encourages, causes, abets, connives, or aids a minor in committing a delinquent act . . . .").

5

her after she removed his hand from her mouth. We agree that the trial court's admission of this testimony was erroneous; however, this error was harmless.

First, we note that a witness's prior consistent statement is admissible when "(1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination."[3] And a witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement if "affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination."[4] Additionally, to be admissible to refute an allegation of fabrication, "the prior statement must predate the alleged fabrication, influence, or motive."[5]

In the case *sub judice*, there was no affirmative charge of *recent* fabrication, and the State elicited the specific testimony on direct examination of the law-

---

[3] *Johnson v. State*, 328 Ga. App. 702, 706 (2) (760 SE2d 682) (2014) (punctuation omitted); *accord Duggan v. State*, 285 Ga. 363, 366 (2) (677 SE2d 92) (2009).

[4] *Johnson*, 328 Ga. App. at 706 (2) (punctuation omitted); *accord Duggan*, 285 Ga. at 366 (2).

[5] *Johnson*, 328 Ga. App. at 706 (2) (punctuation omitted); *accord Moon v. State*, 288 Ga. 508, 511 (4) (705 SE2d 649) (2011).

enforcement officer. Thus, the trial court erred in admitting the officer's testimony regarding the victim's prior consistent statement.[6]

Nevertheless, the admission of the aforementioned testimony does not require reversal, which, in this context, happens only "if it appears likely that the hearsay contributed to the guilty verdict."[7] Here, that is not the case. First, the complained-of hearsay related to a charge of battery for which Pepe-Frazier was acquitted.[8] And second, the testimony was cumulative of other admissible evidence that the victim was slapped by Pepe-Frazier. Indeed, another former prostitute testified to having

---

[6] *See, e.g.*, *Johnson*, 328 Ga. App. at 706 (2) (holding that trial court erred in allowing law-enforcement officer's testimony as to victim's prior consistent statement when there was no affirmative charge of recent fabrication and the State elicited the testimony during its direct examination of the witness).

[7] *Id.* (punctuation omitted); *accord Baugh v. State*, 276 Ga. 736, 739 (2) (585 SE2d 616) (2003).

[8] *See Phillips v. State*, 289 Ga. App. 281, 282 (1) (656 SE2d 905) (2008) (holding that any error in admitting results of breath test through admission of breathalyzer's certificate of inspection, which defendant claimed constituted inadmissible testimonial hearsay, was harmless when the jury acquitted defendant of driving under the influence with an unlawful blood-alcohol concentration).

personal knowledge that Pepe-Frazier slapped the victim. Accordingly, it is unlikely that the erroneously admitted hearsay contributed to the verdict.[9]

2. Next, Pepe-Frazier contends that the trial court erred by qualifying expert witnesses in the areas of commercial sexual exploitation of children and in pimping culture. Again, we disagree.

The State presented the testimony of two witnesses who the trial court qualified, over Pepe-Frazier's objections, as experts in the areas of commercial sexual exploitation of children and in pimping culture, terminology, and relationship dynamics between pimps and prostitutes, respectively. Pepe-Frazier contends that the court's qualification of both experts was in error.

In order to qualify as an expert in a criminal proceeding in Georgia, generally all that was required under the former Evidence Code[10] was that "a person be

---

[9] *See Character v. State*, 285 Ga. 112, 120 (6) (674 SE2d 280) (2009) (holding that admission of prior statement constituted error, but was harmless when other admissible evidence established the same fact); *Johnson*, 328 Ga. App. at 707 (2) (holding that admission of hearsay was unlikely to have contributed to the verdict when other admissible evidence established the same fact).

[10] We note that Pepe-Frazier was tried in 2012, making the former Evidence Code applicable. See Ga. L. 2011, p. 99, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013). That said, the standard under the former Evidence Code for permitting an expert to offer opinion testimony in a criminal proceeding was retained

knowledgeable in a particular matter; his special knowledge may be derived from experience as well as study, and formal education in the subject is not a prerequisite for expert status."[11] And a decision as to whether a witness possesses such learning or experience to qualify as an expert witness "lies within the sound discretion of the trial court and will not be disturbed unless manifestly abused."[12]

Here, the witness qualified as an expert in commercial sexual exploitation of children testified that she was the director of forensic services at the Georgia Center

in Georgia's new Evidence Code at OCGA § 24-7-707, which provides that "[i]n criminal proceedings, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses"; *see also* Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence 398 (3d. ed. 2015).

[11] *Weeks v. State*, 270 Ga. App. 889, 893 (2) (608 SE2d 259) (2004) (punctuation omitted); *accord McCrickard v. State*, 249 Ga. App. 715, 718 (2) (549 SE2d 505) (2001); *see also Burgess v. State*, 292 Ga. 821, 822 (2) (742 SE2d 464) (2013) ("A witness need not be formally educated in the field at issue to be qualified as an expert."); *Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004) ("An expert witness is anyone who, through training, education, skill, or experience, has particular knowledge that the average juror would not possess concerning questions of science, skill, trade, or the like.").

[12] *Stevenson v. State*, 272 Ga. App. 335, 339 (2) (612 SE2d 521) (2005) (punctuation omitted); *accord Griffin v. State*, 243 Ga. App. 282, 286 (5) (531 SE2d 175) (2000); *see also Burgess*, 292 Ga. at 822 (2) ("A trial court has broad discretion in accepting or rejecting the qualifications of an expert. We will not disturb such rulings unless there is a showing that the trial court abused its discretion." (citations and punctuation omitted)).

9

for Child Advocacy; had conducted over one thousand forensic interviews; had been qualified as a forensic-interview expert approximately forty six times; had served on a statewide task-force that addressed concerns regarding commercial sexual exploitation in Georgia; had served on focus groups for the National Center for Missing and Exploited Children to enable national forensic interview protocols for children; had undergone training for mental-health providers in the area of commercial sexual exploitation of children and become a facilitator to train others on the topic; and had attended symposiums and seminars with instruction from the Federal Bureau of Investigation on how to work with sexually exploited children.

As for the witness qualified as an expert in pimping culture, terminology, and relationship dynamics between pimps and prostitutes, she testified that she was the director of forensic services for Fulton County and had previously served as the executive clinical director for a child-advocacy center; had previously worked as the program manager at the Georgia Center for Children, where she dealt with many victims of child-sexual exploitation; had performed more than two thousand clinical interviews, many with victims of teenage prostitution; worked with various law-enforcement agencies in Georgia to train them in understanding cycles of abuse regarding sexual exploitation; had trained with the National Center for Missing and

Exploited Children to study the effects of sexual exploitation, exploring the dynamics between and demeanor of pimps and exploited teenagers; and had studied pimping and prostitution by extensive review of scholarly literature on the subject.

Based on this testimony by both witnesses, we conclude that the trial court did not abuse its discretion in qualifying them as experts in their respective areas.[13] And the subjects about which these witnesses testified—*e.g.*, the reasons why teenage prostitutes do not run away from their pimps, prostitution terminology, and scare tactics frequently used by pimps upon prostitutes—are certainly outside of the ken of

---

[13] *See Burgess*, 292 Ga. at 822-23 (2) (holding that trial court did not abuse its discretion in qualifying an expert witness in the area of gang identity and investigation based on his training and experience); *Stevenson*, 272 Ga. App. at 339 (2) ("[W]hether a witness possesses such learning or experience to qualify as an expert witness lies within the sound discretion of the trial court and will not be disturbed unless manifestly abused." (punctuation omitted)); *Griffin*, 243 Ga. App. at 286 (5) (same); *see also United States v. Anderson*, 560 F3d 275, 281-82 (1) (C) (5th Cir. 2009) (holding that district court did not abuse its discretion in allowing expert testimony from the director of a center specializing in serving victims of sexual exploitation); *United States v. Shamsud-Din*, No. 10 CR 927, 2012 WL 280702, at *4-5 (I) (N.D. Ill. 2012) (denying motion in limine when witness possessed specialized knowledge so as to qualify as an expert in commercial sexual exploitation); *United States v. Williams*, Crim. No. 05-CR-443, 2007 WL 3118306, at *2-3 (II) (B) (M.D. Pa. 2007) (holding that witness possessed specialized knowledge so as to qualify as an expert in commercial sexual exploitation of adults and juveniles).

the average juror.[14] Furthermore, even assuming *arguendo* that the trial court erred in permitting the experts' testimony, given the testimony from the victim, White, and another former prostitute implicating Pepe-Frazier in, *inter alia*, trafficking persons for sexual servitude and pimping, it is highly probable that any such error did not contribute to the jury's verdict.[15]

---

[14] *See United States v. Anderson*, 851 F2d 384, 392-93 (IV) (A) (D.C. Cir. 1988) (noting that expert testimony on "pimping patterns and the pimp-prostitute relationship" might have assisted the jury in determining whether the defendant was a pimp or simply a "gambler with a flashy lifestyle and a penchant for travel," as well as the credibility of the government's prostitute-witnesses); c*f. Edge v. State*, 275 Ga. 311, 313 (5) (567 SE2d 1) (2002) (holding that expert's testimony as to "aspects of gang culture relevant to the case, including requirements of members' obedience, silence, and staunch defense of other gang members, and the punishment meted out to a gang member who violates these requirements" went to "factual matters outside the experience of the average juror"); *Lowe v. State*, 310 Ga. App. 242, 244-45 (2) (a) (712 SE2d 633) (2011) (holding that the meaning of certain street slang or drug terminology was outside the ken of the average juror).

[15] *See, e.g.*, *Morris v. State*, 294 Ga. 45, 49 (3) (751 SE2d 74) (2013) (noting that, because "the relatively brief testimony of [a law-enforcement officer] regarding gangs generally was dwarfed by the magnitude of testimony of the many witnesses offering evidence implicating [the defendant] in specific crimes of violence," it was highly probable that any such error in admitting the testimony did not contribute to the jury's verdicts); *Sanders v. State*, 251 Ga. 70, 76 (3) (303 SE2d 13) (1983) (holding that improper admission of expert testimony was harmless in light of otherwise overwhelming evidence and fact that testimony covering substantially the same area was introduced without challenge).

3. Finally, Pepe-Frazier contends that he received ineffective assistance of counsel in numerous regards. Specifically, Pepe-Frazier argues that his counsel was ineffective by failing to (1) object to the victim's prior consistent statements, (2) request a jury charge on the lesser-included offense of child molestation, (3) object to the imposition of a life sentence for aggravated child molestation when such sentence amounts to "cruel and unusual punishment" within the meaning of the United States and Georgia constitutions,[16] and (4) object to the denial of his right to allocution during sentencing. Once again, we disagree.

Before addressing Pepe-Frazier's contentions, we note that, in general, when a defendant claims that his trial counsel was ineffective, he has the burden of establishing that "(1) his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[16] U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted.*" (emphasis supplied)); Ga. Const., art. I, § 1, ¶ XVII ("Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted*; nor shall any person be abused in being arrested, while under arrest, or in prison." (emphasis supplied)).

different."[17] And when a trial court determines, as the court below did here, that a defendant did not receive ineffective assistance, we will affirm that decision on appeal unless it is clearly erroneous.[18] With these guiding principles in mind, we turn now to Pepe-Frazier's specific arguments.

(a) *Failure to object to inadmissible hearsay and prior consistent statements.* Pepe-Frazier argues that his trial counsel rendered ineffective assistance by failing to object to inadmissible hearsay and testimony regarding the victim's prior consistent statements regarding the sexual acts she performed with him and her activities working for him as a prostitute.

First, Pepe-Frazier takes issue with testimony from a physician's assistant who examined the victim and testified as to the victim's description of the oral and vaginal sex acts she performed with clients and the fact that all but one of her clients wore a condom. But defense counsel did not render ineffective assistance by failing to object to this testimony because any objection would have lacked merit when these

---

[17] *Muldrow v. State*, 322 Ga. App. 190, 193 (2) (b) (744 SE2d 413) (2013) (punctuation omitted); *accord Owens v. State*, 317 Ga. App. 821, 823 (1) (733 SE2d 16) (2012).

[18] *Muldrow*, 322 Ga. App. at 193 (2) (b); *accord Owens*, 317 Ga. App. at 823 (1).

14

statements were made for the purpose of receiving a medical diagnosis or treatment.[19]

Pepe-Frazier also takes issue with his trial counsel's failure to object to the physician's assistant's testimony as to what the victim's mother told her (*i.e.*, that "someone picked [the victim] up, kept her until yesterday and that she said they were soliciting her for sex"), but he cannot establish that he was prejudiced by this testimony when it was cumulative of other admissible evidence establishing the same facts (*e.g.*, White's testimony that the victim was picked up by Pepe-Frazier and worked as a prostitute, the testimony of the other former prostitute who worked with the victim, and the victim's statements to the physician's assistant for purposes of receiving medical treatment).[20]

---

[19] *See, e.g., Porras v. State*, 295 Ga. 412, 420 (3) n.8 (761 SE2d 6) (2014) ("[T]he failure to make a meritless objection cannot amount to ineffective assistance."); *see also* former OCGA § 24-3-4 ("Statements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence."). The hearsay exception provided for in former OCGA § 24-3-4 is now essentially recognized in OCGA § 24-8-803 (4) ("Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.").

[20] *See, e.g., Miller v. State*, 296 Ga. 9, __ (4) (b) (764 SE2d 823) (2014) (holding that any deficiency in counsel's failure to object to alleged hearsay

15

Second, Pepe-Frazier asserts that his trial counsel was ineffective by failing to object to testimony by law-enforcement officers as to what the victim reported regarding his acts of picking her up, taking her to his residence, acting as her pimp, engaging in sexual intercourse with her, and slapping her when she used her cell phone. But again, Pepe-Frazier cannot establish that he was prejudiced by counsel's failure to object to this testimony when it was cumulative of other admissible evidence (*e.g.*, White's eyewitness testimony to some of these same incidents, the testimony of the other former prostitute as to what she and the victim did while staying with Pepe-Frazier).[21]

(b) *Failure to request an instruction on the lesser-included offense of child molestation.* Next, Pepe-Frazier argues that his trial counsel rendered ineffective assistance by failing to request an instruction on the lesser-included offense of child molestation to the charged offense of aggravated child molestation.

---

testimony that repeated statement of witness regarding identity of murder perpetrator did not prejudice defendant, and thus was not ineffective assistance, when testimony was cumulative of other eyewitness testimony); *Maurer v. State*, 320 Ga. App. 585, 592 (6) (b) (740 SE2d 318) (2013) (holding that any deficiency in failure to object to hearsay did not prejudice defendant when testimony was cumulative of other evidence).

[21] *See, e.g.*, *Miller*, 296 Ga. at __ (4) (b); *Maurer*, 320 Ga. App. at 592 (6) (b).

Pepe-Frazier was indicted for and convicted of the offense of aggravated child molestation, which occurs when a person "commits an offense of child molestation which act . . . involves an act of sodomy."[22] And the State established the commission of this offense by the victim's testimony that, on one occasion, both she and Pepe-Frazier's girlfriend simultaneously performed oral sex upon him while at the house. Nevertheless, Pepe-Frazier argues on appeal that his counsel should have requested an instruction on the lesser-included offense of child molestation when there was evidence that he discussed having sexual intercourse with the victim on the day she arrived and that he and the victim engaged in vaginal intercourse.[23] He also argues that his trial counsel's theory of the case—*i.e.*, that the victim was lying about him to escape punishment for running away—did not amount to an "all or nothing"

---

[22] OCGA § 16-6-4 (c); *see also* OCGA § 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person . . . .").

[23] We note that Pepe-Frazier was indicted on a charge of statutory rape related to the allegations of having vaginal intercourse with the victim, but the jury acquitted him of this charge.

17

defense such that the failure to request an instruction on the lesser-included offense was strategic.[24]

Despite Pepe-Frazier's arguments to the contrary, the fact that there was evidence of *other* incidents between Pepe-Frazier and the victim that occurred over the roughly three-week period she lived with him and worked as a prostitute (that could have given rise to *additional* charges of child molestation) cannot mean that his counsel was ineffective in failing to request a charge on the lesser-included offense based on a specific incident for which there was no evidence that anything *other* than aggravated child molestation occurred.[25] Indeed, we have previously held that "such failure cannot support a claim of ineffective assistance [when] as here the evidence does not reasonably raise the issue that [the defendant] may be guilty only of the

---

[24] *See, e.g.*, *Jessie v. State*, 294 Ga. 375, 377 (2) (a) (754 SE2d 46) (2014) (holding that the decision to pursue an "all or nothing" strategy was "not patently unreasonable" and, accordingly, that counsel was not ineffective in his strategic decision not to request a jury charge as to the lesser-included offense).

[25] *Cf. Nguyen v. State*, 296 Ga. App. 853, 855, 856 (2) (a) (676 SE2d 246) (2009) (holding that, had trial counsel requested charge on lesser-included offense of child molestation to charged offense of aggravated child molestation, trial court would have been required to give the charge on the lesser-included offense when defendant testified that during incident in question, he was hugging the victim's stomach, not performing oral sex).

lesser crime."[26] Furthermore, counsel's testimony as to his theory of the case—*i.e.*, that the victim was lying about Pepe-Frazier to avoid punishment for running away—*did* amount to an "all or nothing" defense.[27] Accordingly, Pepe-Frazier has failed to establish that he received ineffective assistance of counsel in this regard.

(c) *Failure to object to the sentence for aggravated child molestation.* Pepe-Frazier contends that his trial counsel rendered ineffective assistance by failing to challenge his sentence for aggravated child molestation, when the life sentence he

---

[26] *Chancey v. State*, 258 Ga. App. 319, 321 (4) (a) (574 SE2d 383) (2002); *see also Head v. State*, 233 Ga. App. 655, 659 (4) (504 SE2d 499) (1998) (holding that counsel was not ineffective in failing to request a charge on the lesser-included offense when the evidence "showed either the commission of the completed offense as charged or the commission of no offense," such that the defendant "was not entitled to a charge on the lesser offense").

[27] *See Gordon v. State*, 327 Ga. App. 774, 781 (5) (b) (761 SE2d 169) (2014) ("Given that [the defendant's] trial strategy was a categorical denial that anything inappropriate happened, seeking a lesser included offense of sexual battery would have been inconsistent with that strategy."); *Smith v. State*, 310 Ga. App. 392, 396 (3) (713 SE2d 452) (2011) ("[The defendant] has pointed to no evidence demonstrating that a touch occurred without the necessary intent. And he did not defend the case on the ground that he touched [the victim] without intent. He pursued the 'all or nothing' defense that [the victim] made up her entire story."); *see also Jessie*, 294 Ga. at 377 (2) (a) (holding that the decision to pursue an "all or nothing" strategy was "not patently unreasonable" and, accordingly, that counsel was not ineffective in his strategic decision not to request a jury charge as to the lesser-included offense).

received for this offense amounted to "cruel and unusual punishment" within the meaning of the United States and Georgia constitutions.

To begin with, we note that Pepe-Frazier has waived any direct constitutional challenge to his sentence by failing to raise such a challenge at the first opportunity (*i.e.*, the sentencing hearing),[28] which is what gives rise to his current assertion that trial counsel rendered ineffective assistance by failing to make such a challenge.[29]

OCGA § 16-6-4 provides that, except in limited circumstances not applicable in this case, "a person convicted of the offense of aggravated child molestation shall be punished by imprisonment for life or by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment,

---

[28] *See Jones v. State*, 290 Ga. 670, 673-74 (3) (725 SE2d 236) (2012) (noting that "a constitutional attack on a sentencing statute should normally be made no later than the sentencing hearing, at a time when corrective action is still possible" and that, because appellant "failed to raise his constitutional challenges at the first available opportunity during the sentencing hearing" and instead" first raised [them] in his amended motion for new trial," his challenges were untimely and not subject to review).

[29] *See id.* at 674 (3) (holding that, because appellant had waived review of constitutional challenge to sentencing statute by failing to raise it at the first opportunity, "the trial court correctly proceeded to examine whether [the appellant's] trial counsel was ineffective for failing to raise constitutional challenges to the sentencing statutes").

followed by probation for life . . . ."[30] As previously noted, Pepe-Frazier contends that the trial court's imposition of a life sentence for his commission of one instance of oral sex with the 14-year-old victim constituted "cruel and unusual punishment."

As our Supreme Court has held, "[o]utside the context of the death penalty, of extreme cases such as life imprisonment as punishment for overtime parking, and . . . of life without parole for a juvenile convicted of non-homicide crimes, successful challenges to the proportionality of legislatively mandated terms of imprisonment should be 'exceedingly rare.'"[31] And when, as here, no categorical Eighth Amendment restriction applies, we must "determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime."[32]

First, we compare the gravity of the offense and the severity of the sentence.[33] And if the threshold comparison leads to an inference of gross disproportionality, this

---

[30] OCGA § 16-6-4 (d) (1).

[31] *Adams v. State*, 288 Ga. 695, 701 (4) (707 SE2d 359) (2011); *see also Ewing v. California*, 538 U.S. 11, 21-22 (II) (A) (123 SCt 1179, 155 LE2d 108) (2003) (noting that "outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare" (punctuation omitted)).

[32] *Adams*, 288 Ga. at 701 (4) (punctuation omitted).

[33] *Id.*

21

Court will then "compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions."[34] In this respect, our Supreme Court has emphasized that "it is the rare case in which the threshold inference of gross disproportionality will be met and a rarer case still in which that threshold inference stands after further scrutiny."[35] Additionally, a sentence which is not otherwise cruel and unusual "does not become so simply because it is 'mandatory.'"[36] Indeed, legislative enactments constitute "the clearest and most objective evidence of how contemporary society views a particular punishment."[37] Thus, the issue of punishment is "one for the legislative branch, and legislative discretion is deferred to unless the sentence imposed shocks the conscience."[38]

---

[34] *Id.* (punctuation omitted).

[35] *Id.* (punctuation omitted).

[36] *Id.* (punctuation omitted).

[37] *Id.* at 701-02 (punctuation omitted).

[38] *Id.* at 702 (punctuation omitted).

In the case *sub judice*, the trial court sentenced Pepe-Frazier to life for his commission of aggravated child molestation, which was "not a passive felony."[39] Indeed, the General Assembly has declared that "sexual offenders who prey on children are sexual predators who present an extreme threat to the public safety."[40] And here, the evidence established that, while engaged in sexual intercourse with his girlfriend, Pepe-Frazier summoned the 14-year-old victim, who was working alongside other young women as a prostitute on his behalf, to his room and placed his penis in her mouth while his testicles were placed in his girlfriend's mouth. Under these circumstances, Pepe-Frazier's sentence does not raise a threshold inference of gross disproportionality.[41] Accordingly, he has failed to show either deficient

---

[39] *Bragg v. State*, 296 Ga. App. 422, 426 (674 SE2d 650) (2009).

[40] Ga. Law 2006, Act. 571, § 1.

[41] *See Adams*, 288 Ga. at 702 (4) (holding that defendant's 25-year sentence did not raise threshold inference of gross disproportionality when "[t]he evidence showed that, during one of numerous acts of child molestation, [the defendant] placed his penis to the young victim's mouth, ejaculated, and made her lick the semen off his penis"); *see also Horne v. State*, 298 Ga. App. 601, 606 (3) (680 SE2d 616) (2009) (holding that life sentence imposed for kidnapping with bodily injury was not cruel and unusual, even if victim's injuries were minor); *Green v. State*, 193 Ga. App. 894, 896 (2) (389 SE2d 358) (1989) (holding that life sentence imposed for kidnapping with bodily injury of 14-year-old victim was not cruel and unusual punishment, even though bodily injury was slight, given circumstances attendant upon offense); *cf. Bradshaw v. State*, 284 Ga. 675, 683 (4) (671 SE2d 485) (2008) (holding that the

performance by trial counsel or a reasonable probability that the outcome would have been different if the constitutional challenges had been timely raised, and his ineffective assistance claim is therefore without merit.[42]

(d) *Failure to object to the denial of the right to allocution.* Lastly, Pepe-Frazier contends that his trial counsel rendered ineffective assistance by failing to object to the trial court's denial of his right to allocution during sentencing. Yet again, we disagree.

During sentencing, defense counsel made a brief statement on his client's behalf, describing the defendant's difficult life and upbringing, before Pepe-Frazier directly addressed the trial court by informing it of the time he had already served with regard to the charges. Then, as the trial court prepared to announce its sentence, Pepe-Frazier attempted to interrupt the court but was prohibited from doing so when

imposition of a life sentence for failure to register as a sex offender constituted cruel and unusual punishment because the sentence was so harsh in comparison to the crime); *Humphrey v. Wilson*, 282 Ga. 520, 528-30 (3) (c) (652 SE2d 501) (2007) (finding a "rare case" of gross disproportionality in holding that 10-year sentence for commission of consensual oral sex between 17-year-old defendant and 15-year-old victim constituted cruel and unusual punishment, given General Assembly's recent sweeping change in the punishment for consensual teenage oral sex).

[42] *See Jones*, 290 Ga. at 676 (3) (holding that defendant failed to establish that he received ineffective assistance of counsel by counsel's failure to challenge sentence as equating to cruel and unusual punishment).

the court said, "It's my turn, sir." Based on this exchange, Pepe-Frazier contends that his trial counsel was ineffective in failing to object to the trial court's denial of his right to allocution.

Under OCGA § 17-10-2, during a presentence hearing, the judge shall "hear argument by the accused or the accused's counsel and the prosecuting attorney, as provided by law, regarding the punishment to be imposed."[43] Here, because trial counsel spoke on his client's behalf (and Pepe-Frazier even made a brief statement), the statute was satisfied and he was not denied his right to allocution.[44] Accordingly, any objection by Pepe-Frazier's trial counsel would have lacked merit and, thus, counsel was not ineffective.[45]

Pepe-Frazier also seems to argue that his defense counsel rendered ineffective assistance by failing to request a presentence investigation or present mitigating evidence, pointing to counsel's testimony at the motion-for-new-trial hearing in

---

[43] OCGA § 17-10-2 (a) (2).

[44] *See Blue v. State*, 275 Ga. App. 671, 675 (3) (621 SE2d 616) (2006) (holding that trial court's admonishment when defendant interrupted pronouncement of sentence was not a violation of defendant's right to allocution when, at the sentencing hearing, the defendant's counsel spoke on his behalf).

[45] *See, e.g.*, *Porras*, 295 Ga. at 420 (3) ("[T]he failure to make a meritless objection cannot amount to ineffective assistance.").

which he conceded that he "probably" should have done those things. However, Pepe-Frazier fails to identify exactly what an investigation would have shown or how it would have changed the sentence he ultimately received. Thus, he cannot establish that he received ineffective assistance of counsel in this regard because he has not shown that he was prejudiced.[46]

Accordingly, for all of the foregoing reasons, we affirm Pepe-Frazier's convictions.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur.*

---

[46] *See Zellmer v. State*, 273 Ga. App. 609, 610 (1) (615 SE2d 654) (2005) (rejecting assertion that defendant received ineffective assistance of counsel when he "fail[ed] to point out what [an] investigation would have shown or how it would have changed the sentence he received" and, despite mentioning out-of-state witnesses, did not "explain what their testimony would have been or how it would have helped him at sentencing"); *Hayes v. State*, 211 Ga. App. 801, 803 (1) (440 SE2d 539) (1994) (rejecting assertion that defendant received ineffective assistance of counsel when he failed to show how he was harmed by the failure to request a presentence investigation).