In the Supreme Court of Georgia

Decided: January 19, 2016

S15A1825. ADAMS v. THE STATE.

HUNSTEIN, Justice.

Appellant Carl Ray Adams was convicted of malice murder in connection with the shooting death of his roommate, Randall Johnson, and was sentenced to life imprisonment. Adams now appeals his conviction on the grounds that the evidence was insufficient and that trial counsel was ineffective. Finding no error, we affirm.[1]

Viewed in a light most favorable to the jury's verdicts, the evidence

---

[1] In January 2007, a Laurens County grand jury returned an indictment charging Adams with malice murder, felony murder (aggravated assault), and aggravated assault. A jury trial was held September 21-25, 2009, and guilty verdicts were returned on all counts. The felony murder count was vacated by operation of law, see Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the trial court correctly merged the aggravated assault count with the malice murder count. See Bell v. State, 284 Ga. 790 (1) (671 SE2d 815) (2009). The trial court sentenced Adams to life imprisonment. Adams filed a motion for new trial on September 30, 2009, and he later amended that motion through new counsel on August 6, 2010, and again on March 27, 2015. Following a hearing, the trial court denied the motion on May 22, 2015, and Adams filed his notice of appeal on June 18, 2015. This appeal was docketed to the September 2015 term of this Court and was thereafter submitted for decision on the briefs.

adduced at trial established as follows. Adams is a Vietnam War veteran who has been diagnosed and treated for Post-Traumatic Stress Disorder (PTSD); he is also an alcoholic. Around the time of the murder, Adams stopped taking his PTSD-related medication and relapsed into heavy drinking. On the day in question, he and Johnson consumed alcohol, watched football in a common living space, and, at some point, began arguing about whether Adams caused Johnson to break up with his girlfriend. The argument continued later in the evening, at which point Adams visited the restroom, then retrieved a pistol from the bedroom and returned to the living room where he shot Johnson. Adams thereafter called 911, and, during that call, Adams told the dispatcher that he had shot Johnson due to "maximum aggravation" following a verbal altercation. In a subsequent statement to investigators, Adams stated that he just "snapped" following the argument and that he shot Johnson after going "over the edge." Adams was clear in this statement to investigators that Johnson never threatened him and that, while he was in a "daze" at the time of the murder, he was "not [in] a different world" and was "not crazy." Jurors also heard testimony that Adams was calm and in control following the murder.

In support of his plea of not guilty by reason of insanity, Adams presented

2

the testimony of Thomas Sachy, M.D, a forensic neuropsychiatrist. Dr. Sachy testified in detail regarding Adams' mental impairments – which include brain damage, PTSD, and dementia – and he explained that these impairments have left Adams with poor impulse control, which could be exacerbated by heavy drinking. Dr. Sachy opined that the murder was an impulsive act, the result of a momentary outburst, which was committed without forethought; he also opined that, at the time of the murder, Adams was unable to distinguish right from wrong.

Adams elected to testify in his own defense. In his testimony, Adams recounted his non-combat role in the Vietnam War, his diagnosis and treatment for PTSD, and his history of paranoia and other mental health disorders. Adams also testified, consistent with his earlier statements, that he shot Johnson following their argument; he also explained that he just "snapped" and that he did not know why he had shot Johnson.

1. The evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Adams was guilty of malice murder. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Likewise, the evidence in this case authorized the jury to conclude that

3

Adams knew right from wrong at the time of the crime. See Durrence v. State, 287 Ga. 213 (1) (b) (695 SE2d 227) (2010). Adams, though, contends that he did not form the malice necessary to constitute murder and that voluntary manslaughter was the appropriate result in this case. However, "[i]t is for a jury to determine from all the facts and circumstances whether a killing is intentional and malicious," White v. State, 287 Ga. 713, 715 (1) (b) (699 SE2d 291) (2010), or "[w]hether the evidence showed only voluntary manslaughter." Jones v. State, 282 Ga. 47, 48 (1) (644 SE2d 853) (2007). The evidence here was sufficient to sustain the jury's verdict. See Todd v. State, 274 Ga. 98 (549 SE2d 116) (2001) (upholding malice murder conviction where accused claimed he "snapped" when wife told him she was leaving him).

2. Adams also contends that trial counsel was ineffective. According to Adams, trial counsel failed to request a continuance after being appointed, failed to adequately advise him of his right to testify, and failed to properly investigate in preparation for trial. To establish his claim of ineffective assistance of counsel, Adams must show that (1) his trial counsel's performance was professionally deficient and (2) but for such deficient performance there is a reasonable probability that the result of the trial would have been different.

4

Strickland v. Washington, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LEd2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). "On appeal, this Court accepts the trial court's findings of fact, unless they are clearly erroneous. However, the trial court's legal conclusions are reviewed de novo." (Quotation marks omitted.) Wilson v. State, 286 Ga. 141, 143 (3) (686 SE2d 104) (2009). Under these well-established principles we now address each of Adams' contentions.

(a) Adams first argues that lead counsel, who was appointed approximately 10-14 days before trial, should have requested a continuance of trial because "two weeks or less is clearly insufficient time for an attorney to properly prepare for a murder trial." Aside from vaguely asserting that trial counsel needed additional time to "get up to speed," Adams offers no specifics regarding how counsel's performance at trial would have been enhanced by having more time to prepare. In light of Adams' failure to identify any particular need for a continuance and the fact that any such request would have been left to the sound discretion of the trial court, see Greene v. State, 274 Ga. 220 (3) (552 SE2d 834) (2001), Adams cannot establish ineffective assistance in counsel's failure to make such a request.

5

(b) Adams next argues that trial counsel failed to properly advise him regarding his right to testify and failed to properly prepare him to testify. The gravamen of this claim is that the decision as to whether Adams would testify was reached following a 15-minute conference conducted during a break in the trial and that, according to Adams, this was an insufficient window in which to advise Adams and prepare him to testify. As the trial court correctly concluded, however, this argument is without merit.

It is well settled that "[d]efense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." Mobley v. State, 264 Ga. 854, 856 (2) (452 SE2d 500) (1995). In its order denying Adams' motion for new trial, the trial court found that, sometime during trial, Adams consulted with both trial counsel and Dr. Sachy on the issue of his testimony; that Adams had sufficient time to consider whether he would testify; that it was Adams who ultimately decided to testify; and that Adams' decision was freely and voluntarily made. The trial court also determined that, even if trial counsel had performed deficiently, there was no evidence that Adams was prejudiced by any such deficiency. The trial court's

6

findings are supported by the trial transcript and the testimony presented at the motion for new trial hearing.

Adams acknowledged during the motion for new trial hearing that he was specifically advised by trial counsel that his testimony might be beneficial and that he reached his decision following that discussion. Further, the trial transcript reflects that the trial court engaged in two on-the-record colloquies with Adams regarding his right and decision to testify; Adams, who had been sworn in, articulated that he understood the trial court's advice regarding his right to testify. Additionally, the trial court engaged in an on-the-record colloquy with trial counsel regarding Adams' decision. During that colloquy, trial counsel explicitly stated that Adams had been advised of his rights by counsel in the presence of Dr. Sachy, that Adams appeared to understand his rights and options, and that Adams had been advised that it was ultimately his decision whether to testify. The record supports the trial court's factual findings, and those findings support the conclusion that trial counsel adequately advised Adams regarding his right to testify. See Potter v. State, 273 Ga. 325, 327 (540 SE2d 184) (2001) (recognizing that "'whether or not to testify in one's own defense is considered a tactical decision to be made by the defendant

7

himself after consultation with his trial counsel'").

Moreover, the record also supports the trial court's finding that there is no evidence of prejudice here. While Adams suggests that trial counsel believed that Adams' testimony "did not go as well as he would have liked," Adams points to nothing that demonstrates how the last-minute decision impacted his trial or whether additional consultation or preparation would have significantly altered Adams' trial testimony or decision to testify.

(c) Adams next contends that trial counsel failed to adequately prepare for trial. According to Adams, he received mental health treatment at two Veteran Affairs hospitals, and trial counsel should have reviewed those records and interviewed the relevant medical personnel; Adams maintains that those records would have supported the defense theory that he suffered from PTSD and paranoia. As an initial matter, we note that nothing in the materials before this Court indicate the nature of the information that may be contained in the medical records or known to the medical personnel. Without such records, Adams cannot establish that trial counsel was ineffective. See Devega v. State, 286 Ga. 448 (4) (a) (689 SE2d 293) (2010). Further, as the trial court found below, there was extensive testimony at trial concerning Adams' mental health, including his

PTSD, from both Dr. Sachy and Adams; in light of the similar testimony presented at trial, Adams was not prejudiced by trial counsel's failure to investigate the VA records that, by Adams' own account, include the same information. See Head v. Hill, 277 Ga. 255, 267 (VI) (A) (587 SE2d 613) (2003).

Judgment affirmed. All the Justices concur.