**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 27, 2016**

# In the Court of Appeals of Georgia

A16A1171. ORENGO v. THE STATE.                                    DO-042 C

DOYLE, Chief Judge.

Following a 2009 jury trial, Michael Orengo was convicted of rape,[1] false imprisonment,[2] sexual battery,[3] and battery[4]; he was acquitted of aggravated sodomy. The trial court granted his subsequent motion for new trial solely as to the rape conviction, and in 2012, he was retried for rape and convicted. Orengo appeals the

---

[1] OCGA § 16-6-1 (a) (1).

[2] OCGA § 16-5-41 (a).

[3] OCGA § 16-6-22.1 (b).

[4] OCGA § 16-5-23.1 (a).

denial of his motions for new trial as to all four charges.[5] With regard to the 2009 trial, Orengo argues that the trial court erred by failing to sua sponte charge the jury on consent and by admitting testimony from a particular State witness not disclosed during discovery. He also alleges that trial counsel was ineffective by failing to: request a jury charge on consent; request a continuance or to cross-examine a particular State witness; or object to testimony regarding the victim's sexual orientation and activity, which testimony violated Georgia's Rape Shield Law. With regard to his rape conviction resulting from the 2012 trial, Orengo argues that the trial court erred by permitting the State to shift the burden of proof by arguing during closing statements; admitting the testimony of a particular State witness; failing to direct a verdict of acquittal because the State failed to prove venue; trying him for rape in violation of his double jeopardy rights; and admitting testimony regarding the victim's sexual orientation and activity in violation of Georgia's Rape Shield Statute. He also argues that trial counsel was ineffective by failing to move for a directed verdict of acquittal based on the State's failure to prove venue or to file a double jeopardy plea in bar. For the reasons that follow, we affirm.

_____

[5] The trial court entered a consent order permitting Orengo to pursue an out-of-time appeal of his conviction from the 2009 trial along with his rape conviction from the 2012 trial.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence."[6] "We do not weigh the evidence or judge the credibility of witnesses, but determine only whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[7]

So viewed, the evidence introduced during the 2009 trial shows that Orengo, a mortgage broker, assisted D. H. in the sale of her Henry County home. Because D. H. was deaf, she and Orengo effectively communicated by passing written notes or by relay text messaging. After meeting several times to discuss the sale of her home, D. H. went to Orengo's office for a meeting on Saturday, February 16, 2008. Orengo asked D. H. to wear a dress to the meeting, but she declined.

Orengo met D. H. in the parking lot, and led her to his office where they met for approximately 20 minutes. Orengo then gave D. H. a note that she did not understand, and she walked over to him for clarification. According to D. H., Orengo then began touching her shoulder, "rub[bing]" and "groping" her, and she "pulled his

---

[6] *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004).

[7] (Punctuation omitted.) *Owens v. State*, 334 Ga. App. 203 (1) (778 SE2d 830) (2015).

3

arm off of [her]." Orengo then began "fondling" her, and she told him she "didn't want that," told him to "get off of [her]," and "pushed him away, but he continued." Orengo then forced her down from behind, groping her breasts and pulling her down from the neck. While twisting D. H.'s hand behind her back, Orengo then pulled down her pants and inserted his penis into her rectum. After showing her that the door to his office was locked, Orengo then pushed D. H. to the floor, forcibly penetrated her vaginally with his penis, and then ejaculated on her stomach. Afterwards, D. H. was very upset, and Orengo said, "I don't want to hurt you." D. H. cleaned herself up in the restroom, pushed Orengo away when he continued to rub her shoulder as she gathered her paperwork, and left the office.

D. H., who later described herself as "in such, such shock" and unable to "think straight," then went to the office of Kim Bashir, her real estate agent. D. H. and Bashir met for approximately four hours, and then D. H. went home. D. H. testified that she did not tell Bashir what Orengo had done because she believed that Bashir and Orengo were good friends. After crying all night, D. H. disclosed the assault to a friend the following morning, and he encouraged her to tell the police. D. H. went to church and disclosed the assault to church officials, who called the police and instructed her to go to the hospital. Medical personnel conducted a rape examination,

4

and D. H. was interviewed by police and gave them the clothing she was wearing during her encounter with Orengo the preceding day.

At the April 2009 trial, the State introduced photographs depicting bruises on D. H.'s arms. A State crime lab employee testified that serology testing on vaginal/cervical smears taken from D. H. during her rape examination at the hospital revealed the presence of spermatozoa, but they were unable to identify a DNA profile other than that of D. H. The employee also testified that although it had a sample of Orengo's DNA, the lab was not asked to analyze D. H.'s clothing for the presence of Orengo's DNA. The State also played for the jury Orengo's videotaped statement; Orengo admitted during cross-examination that in the videotape he repeatedly denied physical contact with D. H.[8]

---

[8] The appellate record contains a *photocopy* of the DVD of Orengo's videotaped statement; the DVD was not included in the record. We note that Court of Appeals Rule 18 (b) provides: "When the notice of appeal directs that transcripts of a trial or a hearing be included in the record, copies of all video or audio recordings that were introduced into evidence shall be transmitted to this Court along with the trial or hearing transcript. It shall be the responsibility of the party tendering the recordings at a trial or a hearing to ensure that a copy of the recording is included in the trial court record; however, it is the burden of the appealing party to ensure that a complete record is transmitted to this Court on appeal, including the transmission of video or audio recordings. If a transcript of a trial or a hearing is designated as part of the appellate record, the clerk of the trial court shall then include the copy of the recording in the appellate record transmitted to this Court. If a copy of a recording played at a trial or a hearing is not included with the transcript designated to be

5

Orengo testified in his own defense, explaining that during one of their meetings, he gave D. H. a note asking her if she "had ever done it with a Puerto Rican," and she smiled in response. Orengo believed that D. H. "knew [he] was flirting" and "was receptive." According to Orengo, during the February 16, 2008 meeting, he "accidentally brushed up on [D. H.]. And the next thing you know it, we were engaged. And we just started having sex. . . ." Orengo denied that D. H. communicated to him in any way that she did not want to engage in sexual relations with him. He denied anally penetrating, striking, hitting, or choking D. H. during the encounter, but testified that they "were grabbing each other." Orengo conceded that he lied to police regarding whether he had sexual intercourse with D. H., but testified he did so because he did not want his wife or children to find out that he had engaged in extramarital relations.

---

transmitted in the appellate record, this Court may take whatever action is necessary in order to ensure completion of the record, including, but not limited to, issuing a show-cause order requiring an explanation of its absence. The appellant's failure to complete the record may also result in this Court declining to consider enumerations of error related to the missing evidence. Copies of any video or audio recordings of evidence shall be submitted to this Court on DVD or on video or audio compact disc, and shall include any proprietary software necessary to play the recordings."). Although this Court ultimately obtained a copy of the DVD from the trial court, we note that the burden remains on the appellant to perfect the record on appeal. In that this is a recurring problem, we also remind the trial court clerks that they should not send us photo copies of a DVD, but the DVD itself.

The jury found Orengo not guilty of aggravated sodomy and guilty of rape, false imprisonment, sexual battery, and battery. Orengo moved for a new trial, and on February 8, 2012, the trial court granted a new trial as to the rape charge, but denied the motion as to false imprisonment, sexual battery, and battery.[9]

On October 9, 2012, the new trial as to the rape charge began. The State's evidence was similar to that introduced at the original trial.[10] Orengo, however, did not testify at the second trial. At the conclusion of the evidence, the jury found Orengo guilty of rape.

Orengo filed a motion for new trial as to his rape conviction, and the trial court denied the motion. On May 18, 2015, the trial court entered a consent order permitting Orengo to file an out-of-time appeal of his conviction for false imprisonment, sexual battery, and battery resulting from the initial trial. This appeal of the convictions from both trials followed.

---

[9] At a July 20, 2012 hearing, trial counsel inquired regarding the basis for the trial court's ruling on Orengo's motion for new trial, and the trial court responded, "[d]uring the course of [the] trial, this court charged the jury on the offense of rape and did not charge as to the charge on consent. . . ." The trial court, however, did not explain the basis for its ruling in the February 8, 2012 written order on the motion for new trial.

[10] We note relevant differences in the evidence as we analyze each of Orengo's enumerations of error.

1. As an initial matter, we note that in his lengthy brief on appeal, Orengo, on more than one occasion, challenges errors and alleges instances of ineffective assistance of counsel in both the 2009 trial and the 2012 trial in the same enumeration of error. This practice violates our appellate rules[11] and complicates our review. Nevertheless, as is our obligation, we will review those claims of error to the extent we can ascertain his arguments.[12]

*2009 conviction for false imprisonment, sexual battery, and battery*

Orengo asserts the following enumerations of error with regard to his first trial.

2. Orengo contends that the trial court erred when it failed to sua sponte charge the jury on consent, his sole defense at trial. We disagree.

Orengo did not request a jury instruction on consent.

---

[11] See OCGA § 5-6-40 ("The appellant and cross appellant shall file with the clerk of the appellate court . . . an enumeration of the errors which shall set out separately each error relied upon.").

[12] See OCGA § 5-6-48 (f) ("Where it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, what judgment or judgments were appealed from or what errors are sought to be asserted upon appeal, the appeal shall be considered in accordance therewith notwithstanding that the notice of appeal fails to specify definitely the judgment appealed from or that the enumeration of errors fails to enumerate clearly the errors sought to be reviewed.").

If an affirmative defense is raised by the evidence, including the defendant's own statements, the trial court must present the affirmative defense to the jury as part of the case in its charge, even absent a request. The affirmative defense, however, need not be specifically charged if the case as a whole is presented to the jury. In a case involving charges of rape and aggravated sodomy, the effect of a consent defense is simply to traverse the [S]tate's proof. Thus, the failure to specifically charge on consent as a sole defense to an extrinsic offense, absent a request for such charge, was not reversible error.[13]

3. Orengo asserts that the trial court erred by admitting the testimony of expert witness Anique Whitmore. We find no reversible error.

After the defense rested, the State called Whitmore as a rebuttal witness. Over Orengo's objection, the trial court qualified her as "an expert therapist trained in sexual victimization," and Whitmore testified regarding disclosure patterns by sexual assault victims, including reasons for disclosure delay, particularly where the victim is familiar with the assailant or has "special needs," including hearing impairment.

Orengo argues that the trial court erred by admitting Whitmore's testimony. First, Orengo contends that the State failed to identify her as a witness during

---

[13] (Punctuation omitted.) *Felker v. State*, 252 Ga. 351, 363 (1) (c) (314 SE2d 621) (1984). See also *Lamar v. State*, 243 Ga. 401, 403 (6) (254 SE2d 353) (1979) ("The element of force negates any possible mistake as to consent."); *Jenkins v. State*, 180 Ga. App. 245, 246 (1) (348 SE2d 905) (1986).

9

discovery, and instead, improperly admitted her testimony as rebuttal evidence. According to Orengo, the State clearly anticipated the need for her testimony, given D. H.'s delay in reporting the assault, and elected to present it as rebuttal evidence to ambush the defense. But although Orengo objected to the admission of Whitmore's testimony, he never asserted this particular basis – that it was not in fact rebuttal evidence – for his objection.[14]

> It is the rule in Georgia that objections should be made with sufficient specificity for the trial court to identify the precise basis. It is not important in what format the allegation is cast so long as it is clear to the court the specific error alleged that the court may have the opportunity to correct them. . . . On appeal only issues properly raised before the trial court will be considered.[15]

---

[14] After the State tendered Whitmore as an expert, the trial court inquired whether there was any objection, and defense counsel replied, "Yes," without specifying the basis therefor; he did, however, request to voir dire the witness as to her qualifications and credentials. After he concluded voir dire, defense counsel advised the trial court that he "[stood] on the objection," again without specifying the basis for the objection. At no time did Orengo argue to the trial court that Whitmore was not a true rebuttal witness.

[15] (Citation and punctuation omitted.) *Sharpe v. Dept. of Transp.*, 270 Ga. 101, 102 (505 SE2d 473) (1998).

Here, because Orengo's objection was insufficient to notify the trial court that his objection to Whitmore's testimony was that it was not proper rebuttal evidence, Orengo has waived this argument on appeal.[16]

Orengo also contends that Whitmore's testimony was inadmissible because it constituted "improper bolstering." Again, Orengo did not specify this as the basis for his objection at trial, and it is not clear that the trial court ruled on such an argument. Accordingly, for the same reason, we conclude that Orengo waived this argument on appeal.[17]

4. Orengo argues that the trial court erred by admitting evidence over his objection regarding D. H.'s sexual orientation and activity in violation of the Rape Shield Statute.[18] Orengo did not, however, provide a citation to the record to support

---

[16] See id. at 103. See also *Altman v. State*, 229 Ga. App. 769, 770 (495 SE2d 106) (1999).

[17] See *Altman*, 229 Ga. App. at 770.

[18] Orengo contends in the argument portion of his brief that trial counsel was ineffective by failing to object to and move for a mistrial after each instance in which the State admitted evidence or presented argument in violation of the Rape Shield Statute. Orengo's enumeration regarding evidence and argument presented in violation of the Statute, however, alleges only that the trial court erred; it does not allege ineffective assistance of counsel in this regard. Thus, "this argument falls outside the enumerated error and will not be considered." *Kohlhaas v. State*, 284 Ga. App. 79, 85, n. 4 (643 SE2d 350) (2007).

11

this contention, and our review did not reveal the introduction of such evidence during D. H.'s testimony.[19]

Court of Appeals Rule 25 (c) (2) (i) provides: "Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of such reference, the Court will not search for or consider such enumeration." "Indeed, it is not the function of this Court to cull the record on behalf of a party; the burden is upon the party asserting error to show it affirmatively in the record."[20] Accordingly, under these circumstances, Orengo has abandoned this enumeration of error.

5. Orengo further alleges that he received ineffective assistance of counsel. To establish these claims,

> [Orengo] must show that (1) his trial counsel's performance was
> professionally deficient and (2) but for such deficient performance there
> is a reasonable probability that the result of the trial would have been
> different. On appeal, this Court accepts the trial court's findings of fact,

---

[19] We note that the record in this case consists of 19 volumes.

[20] *Williams v. Resurgens & Affiliated Orthopaedists*, 267 Ga. App. 578, 579 (1) (600 SE2d 378) (2004).

unless they are clearly erroneous. However, the trial court's legal conclusions are reviewed de novo.[21]

(a) Orengo contends that trial counsel was ineffective by failing to cross-examine Whitmore or to request a continuance so that she could procure a defense expert to counter Whitmore's testimony. We find no basis for reversal.

Decisions regarding

> how to deal with the presentation of an expert witness by the opposing side, including whether to present counter expert testimony, to rely upon cross-examination, to forego cross-examination and/or to forego development of certain expert opinion, is a matter of trial strategy which, if reasonable, cannot be the basis for a successful ineffective assistance of counsel claim.[22]

Orengo has not established that trial counsel's decisions not to introduce expert testimony to rebut that of Whitmore or not to cross-examine her were unreasonable.

---

[21] (Citations and punctuation omitted.) *Adams v. State*, 298 Ga. 371, 372 (2) (782 SE2d 36) (2016), quoting *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984).

[22] *Thomas v. State*, 284 Ga. 647, 650 (3) (b) (670 SE2d 421) (2008).

Thus, the trial court did not err by rejecting this ineffective assistance of counsel claim.[23]

(b) Orengo argues that trial counsel was ineffective by failing to request a jury instruction on consent.

"Decisions as to which charges will be requested and when they will be requested fall within the realm of trial tactics and strategy . . . and provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them."[24]

Here, notwithstanding the trial court's failure to specifically charge the jury regarding consent, it did instruct that: to prove sexual battery, the State was required to prove that Orengo made physical contact with D. H.'s breasts without her consent; and to prove false imprisonment, the State had to establish that Orengo detained D. H. without legal authority. The court also charged the jury on intent and instructed that the State had to prove each element of the crimes beyond a reasonable doubt.

---

[23] See *Brown v. State*, 292 Ga. 454, 457 (2) (738 SE2d 591) (2013); *Phillips v. State*, 285 Ga. 213, 223 (5) (i) (675 SE2d 1) (2009); *Oliver v. State*, 324 Ga. App. 53, 57-58 (2) (748 SE2d 510) (2013).

[24] (Citation and punctuation omitted.) *Jackson v. State*, 278 Ga. 235, 239 (5) (a) (599 SE2d 129) (2004).

Finally, the trial court charged the jury that "a person shall not be guilty of a crime if the act or omission to act constituting the crime was induced by misapprehension of fact[,] which if true would have justified the act or omission." Given these charges, trial counsel's failure to request a jury charge on consent "was reasonable and provides no basis for a reversal of [Orengo's] conviction."[25] Moreover, Orengo has failed to show that the outcome of the trial was affected by counsel's failure to request a consent charge.[26]

*2012 conviction for rape*

The following enumerations refer to alleged reversible error occurring during the second trial, which took place during 2012.[27]

6. Orengo argues that the trial court erred by permitting the State to shift the burden of proof by arguing during closing that Orengo should have performed DNA testing of D. H.'s clothing and admitted the results at trial.

On appeal, Orengo points to the following statements of the prosecutor during closing argument:

---

[25] *Goldey v. State*, 289 Ga. App. 198, 202 (2) (g) (656 SE2d 549) (2008).

[26] See id.

[27] Again, Orengo did not testify at the second trial.

15

[J]ust like [the defense] brought [expert witness] Dr. Loring in here, they could have found out . . . if the defendant's DNA was on those jeans. Let's be clear, we should have gotten the jeans tested. She is absolutely correct about that. But if you really want to know whose DNA it is, you're really saying I didn't rape this woman; my DNA is not going to be on those jeans. Why not? Why are [sic] you getting expert witnesses. . . . Why not test it? Because that's not in their interest.

Trial counsel objected on the basis that the argument constituted burdon shifting, but was overruled. The State went on to argue that "[w]e want to talk about DNA because we live in the age of 'Forensic Files' and 'CSI,' and DNA proves and solves everything." The prosecutor then stated, "[L]et's just say, hypothetically, that we got these jeans tested[,] and the defendant's DNA was on it, what do you think would have happened?" Trial counsel again objected, but was overruled.

Orengo fails to point out, however, that defense counsel raised this issue during her closing, before the prosecutor gave his closing statement. Defense counsel argued: "Did the State prove to you beyond a reasonable doubt that the sperm that they found from [D. H.] belonged to [Orengo]? . . . Could they have? Yeah, they could have. They could have." She also argued: "Today[,] we don't have to rely on he said versus she said because we've got scientific ways of establishing . . . whether

16

or not what is said is true and that scientists, independent of any of us, can bring into this court."

The prosecutor then conceded that "there is no DNA. You can't say with scientific certainty that the semen that was found in the victim's vagina belonged to this defendant." After pointing out the other evidence of Orengo's guilt, the prosecutor then advised the jury that "[the State has] the burden of proving this case beyond a reasonable doubt. That burden never, ever shifts to the defendant," before pointing out Orengo's failure to have the jeans tested.

"A prosecutor may argue that the defendant has not rebutted or explained the State's evidence. It is also permissible for a prosecutor, in closing argument, to urge the jury to draw reasonable deductions from a defendant's failure to produce purportedly favorable witnesses."[28] Here, the prosecutor's comments were made immediately after defense counsel's comments regarding the State's failure to conduct DNA testing of the victim's clothing. And the prosecutor contemporaneously emphasized that the State bore the burden of proof and that it never shifted to the

---

[28] (Citations and punctuation omitted.) *Arrington v. State*, 286 Ga. 335, 346 (16) (c) (687 SE2d 438) (2009).

17

defense, which was reiterated by the trial court when it instructed the jury. Under these circumstances, we find no basis for reversal.[29]

7. Orengo argues that the trial court erred by admitting Whitmore's expert testimony.

Before the second trial began, defense counsel made a pretrial motion to exclude Whitmore's testimony on the basis that it was improper for her to testify as an expert because she was an employee of the district attorney's office and had failed to investigate the case. The trial court overruled the objection, noting that Whitmore's "livelihood, the sorts of her livelihood, and where she is employed are all issues which would go to the weight of her testimony as opposed to its admissibility and certainly be explored by the defense if she's called." At trial, after Whitmore explained her education and employment as a therapist and in the district attorney's office as the director of forensic services, which involved interacting and working with victims of sexual assault, she was qualified as an expert in "counseling victims of sexual assault" without objection by Orengo.

Whitmore then testified about differences in reporting crimes and in responding to sexual assault by victims, particularly delays in disclosure by deaf victims. During

_____

[29] See id.; *Miller v. State*, 275 Ga. 730, 739 (7) (571 SE2d 788) (2002).

18

cross-examination, Whitmore conceded that she had never spoken with D. H. nor did she have any personal knowledge from interviewing or assessing witnesses involved in this case.

On appeal, Orengo argues that Whitmore's testimony should have been excluded as improper bolstering evidence, particularly in light of her failure to observe D. H. We find no abuse of discretion.

> A decision as to whether a witness possesses such learning or experience to qualify as an expert witness lies within the sound discretion of the trial court and will not be disturbed unless manifestly abused. An expert is one whose habits and profession endow that person with the particular skill needed in forming an opinion on the subject matter at inquiry.[30]

"Improper bolstering occurs when an expert witness is allowed to give . . . her opinion as to whether the complaining witness is telling the truth, because that is an ultimate issue of fact and the inference to be drawn is not beyond the ken of the average juror."[31]

---

[30] (Citations omitted.) *Griffin v. State*, 243 Ga. App. 282, 286 (5) (531 SE2d 175) (2000).

[31] *Maddox v. State*, 275 Ga. App. 869, 871 (2) (622 SE2d 80) (2005).

19

Here, Whitmore testified based on her experience interviewing and counseling victims of sexual assault as to a victim's demeanor after an assault and possible disclosure delays. "That was in no way a comment on an ultimate issue of fact. And the court was authorized to find that the conclusion drawn by the expert was beyond the ken of the jurors."[32] And we previously have affirmed the admission of expert testimony regarding the post-event conduct of rape and sexual assault victims, including disclosure delay.[33] Given Orengo's argument at trial that D. H.'s behavior after the alleged incident, including her delay in reporting it, supported the conclusion that she fabricated the allegations, we find no abuse of discretion in admitting Whitmore's testimony.[34] And because Orengo failed to object to Whitmore's qualifications as an expert, he has waived any objection to such.[35] Pretermitting his

[32] Id.

[33] See *Stevenson v. State*, 272 Ga. App. 335, 338-339 (2) (612 SE2d 521) (2005); *Thomas v. State*, 239 Ga. App. 460, 462-463 (3) (521 SE2d 397) (1999). See also *McCoy v. State*, 278 Ga. App. 492, 493 (3) (629 SE2d 493) (2006) (noting that "Georgia courts . . . have long allowed testimony regarding child sexual abuse syndrome").

[34] See *Maddox*, 275 Ga. App. at 871 (1); *Stevenson*, 272 Ga. App. at 338-339 (2).

[35] See *Reynolds v. State*, 200 Ga. App. 43, 44 (2) (406 SE2d 553) (1991).

waiver, Orengo's arguments regarding her employment in the prosecutor's office as well as her failure to investigate this go to the weight and credibility of her testimony and provide no basis for reversal.[36]

8. Next, Orengo contends that the trial court erred by failing to sua sponte direct a verdict after the State failed to prove venue. "[Because Orengo] made no motion for a directed verdict of acquittal, the trial court did not err by failing to direct a verdict sua sponte."[37]

9. Orengo further argues that because he was convicted on the lesser-included offenses of battery and sexual battery following his first trial in 2009, double jeopardy precluded his 2012 trial for rape.

> Retrial of a defendant is not barred if post-conviction proceedings resulted in the invalidation, setting aside, reversal, or vacating of the conviction, unless the accused was thereby adjudged not guilty or unless

---

[36] See *Taylor v. State*, 337 Ga. App. 486, 499 (4) (c) (788 SE2d 97) (2016) ("[The defendant's] challenges to [a witness's] expert opinion based on a lack of personal knowledge and insufficient investigation go to the weight and credibility, not admissibility, of the testimony."); *Williamson v. Smith, Inc.*, 246 Ga. App. 745, 749 (5) (542 SE2d 151) (2000) ("The fact that [the witness] was a party to the case simply goes to the weight and credibility of his expert testimony, not to his qualifications as an expert.").

[37] *Bryson v. State*, 316 Ga. App. 512, 518 (4) (729 SE2d 631) (2012), citing *McCord v. State*, 182 Ga. App. 586 (1) (356 SE2d 689) (1987).

there was a finding that the evidence did not authorize the verdict. Where the defendant secures a new trial based on the commission of reversible error at a prior trial, the plea of double jeopardy is waived.[38]

Here, the evidence admitted at the first trial, including D. H.'s testimony, photographs of her bruises, and the discovery of sperm on vaginal swabs taken from D. H. the day following the assault, was sufficient to support Orengo's conviction for rape.[39] Accordingly, this enumeration is without merit.

10. Orengo contends that the trial court erred by admitting evidence regarding D. H.'s recent sexual activity in violation of the rape shield statute.[40] We discern no basis for reversal.

During direct examination, the prosecutor asked D. H.: "Around the time of the rape, of the assault that Saturday, had you had sex with anybody – " Defense counsel

---

[38] (Citation and punctuation omitted.) *Howard v. State*, 200 Ga. App. 188, 191 (6) (407 SE2d 769) (1991), quoting OCGA § 16-1-8 (d) (2).

[39] See *Glaze v. State*, 317 Ga. App. 679, 681-682 (1) (732 SE2d 771) (2012).

[40] Again, Orengo did not allege ineffective assistance of counsel in his enumeration regarding violation of the rape shield statute. Thus, to the extent that Orengo argues that trial counsel was ineffective for failing to object to and move for mistrial after each admission of evidence and argument that he alleges violated the rape shield statute, that argument fails for the same reason set forth in Division 4, footnote 18.

objected that the question violated the rape shield statute, and the trial court overruled the objection. The prosecutor then asked whether D. H. "had sex with anyone" within a few days of the assault, and D. H. replied, "No."

> The rape shield [statute[41]] excludes evidence of past sexual behavior of the alleged victim of a rape or other sex crime. It is intended to protect the complaining witness from intrusive inquiries into her history of sexual activity with persons other than the defendant, inquiries which could only be intended to support the inference that the victim consented to intercourse with the defendant. Exceptions to the law have been made, however, when evidence of the victim's sexual activity is relevant to an issue other than consent.[42]

Here, D. H's testimony about her sexual activity in the few days around the alleged rape was relevant to exclude the possibility that the sperm found on swabs of her vagina the day after the rape belonged to someone other than Orengo. And, "[t]he Rape Shield Statute . . . cannot be invoked by a defendant to prevent a victim from

---

[41] Former OCGA § 24-2-3. Under Georgia's new Evidence Code, which was effective January 1, 2013, the rape shield statute is codified at OCGA § 24-4-412.

[42] (Footnotes and punctuation omitted.) *Warner v. State*, 277 Ga. App. 421, 423-424 (2) (626 SE2d 620) (2006).

offering otherwise relevant evidence."[43] "Under these circumstances, the trial court did not abuse its discretion in admitting the victim's testimony."[44]

11. Finally, Orengo contends that trial counsel was ineffective during the second trial.

(a) Orengo argues that counsel was ineffective by failing to move for a directed verdict on the issue of venue. "[Orengo] does not claim that venue was, in fact, improper, but instead asserts that the State did not properly establish venue."[45]

D. H. testified that the rape occurred in Orengo's office. According to the police officer who took D. H.'s initial report, D. H. told him that she had been at "a meeting at a mortgage office on Old National Highway with . . . Orengo," and the location D. H. described was on the 5300 block of "Old National Highway," which was located in Fulton County. Another officer testified that D. H. told him that Orengo sexually assaulted her at his office, which the officer determined was located

---

[43] *Demetrios v. State*, 246 Ga. App. 506, 514 (7) (c) (541 SE2d 83) (2000).

[44] See *Warner*, 277 Ga. App. at 424 (2) (evidence regarding rape victim's sexual history "was relevant to exclude the possibility that someone other than [the defendant] had sexual contact with her and gave her herpes. It was not introduced to bolster the victim's character or show consent.").

[45] *Hinkle v. State*, 282 Ga. App. 328, 330 (3) (638 SE2d 781) (2006).

in Fulton County. This evidence provided sufficient proof of venue.[46] "Thus,

[Orengo] cannot show that the outcome of his trial on these two charges would have

been different had trial counsel moved for a directed verdict."[47]

(b) Orengo argues that counsel was ineffective by failing to pursue a plea in bar

on double jeopardy grounds. As we held in Division 9, double jeopardy did

---

[46] See *Duvall v. State*, 273 Ga. App. 143, 144 (1) (b) (614 SE2d 234) (2005). See also *Bentley v. State*, 314 Ga. App. 599, 600 (1) (724 SE2d 890) (2012) ("Where the victim testifies where the crime took place, and an officer identifies that location as being within a certain county, the officer's testimony is not hearsay.") (punctuation omitted), quoting *Bravo v. State*, 269 Ga. App. 242, 245 (2) (603 SE2d 669) (2004). In the absence of any evidence of any inaccuracy or motive to mislead or distort by the interpreter, we reject Orengo's contention that because the police officers communicated with D. H. through a sign language interpreter, their testimony about her statements to them constituted inadmissible hearsay. Cf. *Lopez v. State*, 281 Ga. App. 623, 625 (1) (636 SE2d 770) (2006) ("Under the so-called 'language conduit' rule, absent a motive to mislead, distort or some other indication of inaccuracy, when persons speaking different languages rely upon a translator as a conduit for their communication, the statements of the translator should be regarded as the statements of the persons themselves without creating an additional layer of hearsay.") (punctuation omitted). See *Davis v. State*, 214 Ga. App. 360 (1) (448 SE2d 26) (1994) (for purposes of child hearsay statute, "[a]nswers communicated through an interpreter [for the deaf child victim] are made to the person asking the question, despite the existence of an interpreter.").

[47] *Hinkle*, 282 Ga. App. at 330 (3).

not preclude Orengo's retrial for rape. And the failure to raise a meritless double jeopardy claim does not constitute ineffective assistance of counsel.[48]

*Judgment affirmed. Andrews, P. J. and Ray, J., concur.*

---

[48] See, e.g., *Southwell v. State*, 320 Ga. App. 763, 765 (2) (740 SE2d 725) (2013).